**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN FOLEY,                              )<br>                                                     )<br>            Plaintiff,                          )<br>                                                     )<br>     vs.                                          )<br>                                                     )<br>WELLS FARGO BANK, N.A.,      )<br>                                                     )<br>            Defendant.                      )<br>_____ ) | 3:10-cv-00702-RCJ-VPC<br><br><br>**ORDER** |

This case arises out of the foreclosure of Plaintiff's mortgage. A trustee's sale has occurred. The Court has granted a Temporary Restraining Order ("TRO") against eviction, extended that order by stipulation of the parties, and set the present hearing for a preliminary injunction. For the reasons given herein, the Court denies a preliminary injunction.

## I.    FACTS AND PROCEDURAL HISTORY

On July 22, 2005, Plaintiff John Foley gave lender World Savings Bank, FSB ("WSB") a $332,800 purchase money mortgage against the property at 5690 Stillmeadow Dr., Reno, NV 89502 (the "Property"). (*See* Deed of Trust ("DOT") 1–2, July 22, 2005, ECF No. 12-1, at 2). Golden West Savings Association Service Co. ("Golden West") was the trustee, and MERS is listed nowhere on the DOT. (*See id.* 2). On October 26, 2007, Golden West filed a Notice of Breach and Default and of Election to Cause Sale (the "NOD"). (*See* NOD 1–2, Oct. 26, 2007, ECF No. 12-1, at 22). The NOD indicated that the mortgage was being accelerated. (*See id.* 1, fourth unnumbered paragraph ("[WSB] . . . does hereby declare all sums secured [by the DOT] immediately due and payable . . . .")).

Plaintiff and his wife petitioned for Chapter 13 bankruptcy in the Northern District of California on February 1, 2008, and a plan was confirmed on May 23, 2008. (*See* Compl. ¶ 13, Oct. 19, 2010, ECF No. 1-2). On September 2, 2008, Bankruptcy Judge Leslie Tchaikovsky granted in part Wachovia Mortgage, FSB's ("Wachovia")[1] motion for relief form automatic stay, ordering that the stay would remain in place on three conditions: (1) on August 15, 2008,[2] the debtors would begin tendering regular monthly payments plus one-sixth of a payment each month to Wachovia; (2) the debtors would be completely current on the mortgage no later than close of business on February 27, 2009; and (3) the debtors would thereafter continue regular monthly payments. (*See* Adequate Protection Order 2, Sept. 2, 2008, ECF No. 12-1, at 25). On February 17, 2010, Judge Tchaikovsky terminated the automatic stay as to Wachovia, specifically indicating that it was "no longer restrained from completing its pending foreclosure initiated **pursuant to the Notice of Default recorded on November 07, 2007** . . . ." (Order Terminating Automatic Stay 2, Feb. 17, 2010, ECF No. 12-1, at 30 (emphasis added)).[3]

Cal-Western Reconveyance Corp. ("Cal-Western"), as Wachovia's power of attorney, substituted itself as trustee on October 29, 2008. (*See* Substitution of Trustee, Oct. 29, 2008, ECF No. 12-1, at 35). Cal-Western noticed a trustee's sale for May 10, 2010, (*see* Notice of Trustee's Sale, Apr. 12, 2010, ECF No. 12-1, at 37), which did not occur, and it noticed a second sale for September 7, 2010, (*see* Notice of Trustee's Sale, Aug. 9, 2010, ECF No. 12-1, at 40), on which date it sold the Property to Wachovia, (*see* Trustee's Deed Upon Sale, Sept. 7, 2010, ECF No. 12-1, at 43).

---

[1] Formerly known as WSB.

[2] Wachovia appears to have drafted the order before the July 25, 2008 hearing date, but Judge Tchaikovsky did not sign it until September 2, 2008.

[3] The NOD recorded on November 7, 2007 is the same one that was signed by the original trustee on October 26, 2007. (*See* NOD 1–2).

On October 19, 2010, Plaintiff sued Defendant Wells Fargo Bank, N.A. ("Wells Fargo") as successor-in-interest to Wachovia in the Second Judicial District of Nevada on seven causes of action, including wrongful foreclosure based on the theory that the failure to file another notice of default after Judge Tchaikovsky lifted the automatic stay violated NRS section 107.080(2)(c). (*See* Compl. ¶ 21). Defendant removed on November 8, 2010. On December 29, 2010, the Justice Court of Reno Township granted Wells Fargo a Temporary Writ of Restitution, giving possession of the Property to Wells Fargo and ordering Plaintiff to vacate by 5:00 p.m. on January 28, 2011. (*See* Writ of Restitution, Dec. 29, 2010, ECF No. 12-1, at 55). Plaintiff asked this Court for a TRO against enforcement of the state court order, which the Court granted on January 20, 2011 and later extended by stipulation until the preliminary injunction hearing, which was itself continued several times by stipulation.

## II. LEGAL STANDARDS

The Ninth Circuit in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Ninth Circuit has explicitly recognized that its "possibility" test was "definitively refuted" in *Winter*,

and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Ninth Circuit's pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

A recent Ninth Circuit ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Ninth Circuit rulings and determined that the sliding scale test remains viable when there is a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 622 F.3d 1045, 1052–53 (9th Cir. 2010). This case presents some difficulty in light of *Winter* and prior Ninth Circuit cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374 (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test, the *Winter* Court specifically emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 375,

and the word modifies the success-on-the-merits prong the same way, *id.* at 374. In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 392 (Ginsburg, J., dissenting). But Justice Ginsburg, like the majority, did not address whether she believed relief could be granted when the chance of success was *less than* likely. A "lower likelihood" is still *some* likelihood. We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits. "Likely" means "having a high probability of occurring or being true." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009). The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not as being in competition with it. "Serious questions going to the merits" must mean that there is at least a reasonable probability of success on the merits. "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement of "likely."

### III. ANALYSIS

The Court will not grant a preliminary injunction. Plaintiff's argument rests dispositively on the adequacy of the original NOD to support the foreclosure. Judge Tchaikovsky's order was clear that because Plaintiff had not complied with her Adequate Protection Order, Wachovia was permitted to resume foreclosure based on the original NOD. If Plaintiff believes Judge Tchaikovsky's order was in error, he must ask Judge Tchaikovsky to reconsider, or he must appeal the order to the U.S. District Court for the Northern District of California or the Ninth

1   Circuit Bankruptcy Appellate Panel, but the order appears final, and the issues it resolves cannot
2   be relitigated in this Court.  Plaintiff has almost no chance of success on the merits, because the
3   issue of whether foreclosure was proper based on the original NOD is precluded from relitigation
4   (collaterally estopped) based on Judge Tchaikovsky's order.  It is theoretically possible Plaintiff
5   could produce a later order showing that Judge Tchaikovsky's order had been vacated, but he has
6   not done so.  Furthermore, Wells Fargo has produced the docket of the bankruptcy proceedings,
7   and there is no indication Judge Tchaikovsky's Order Terminating Automatic Stay has been
8   stayed, vacated, amended, or even appealed.

9   Also, as Defendant notes, there is no chance of irreparable harm as a result of the Writ of
10  Restitution.  The effect of that writ is to remove Plaintiff from property to which he no longer
11  holds title.  Avoidance of the sale is a possible remedy under Nevada law, but Plaintiff seeks to
12  change the status quo via his Complaint, not to maintain it, i.e., he seeks to reverse a completed
13  trustee's sale, not to prevent one.  In the present motion for preliminary injunction, he seeks only
14  to maintain his occupancy.  Money damages are adequate to repair such injury, even if such an
15  eviction were wrongful, which it does not appear to be.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.

DATED: This 5th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge