# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOHN FOLEY, | ) |
| Plaintiff, | ) |
| vs. | ) 3:10-cv-00702-RCJ-VPC |
| WELLS FARGO BANK, N.A., | ) **ORDER** |
| Defendant. | ) |

This case arises out of the foreclosure of Plaintiff's mortgage. A trustee's sale has occurred. Pending before the Court are motions to dismiss the Amended Complaint ("AC") and to strike the jury demand therein. For the reasons given herein, the Court denies the motion to dismiss and grants the motion to strike the jury demand.

**I.      FACTS AND PROCEDURAL HISTORY**

On July 22, 2005, Plaintiff John Foley gave lender World Savings Bank, FSB ("WSB") a $332,800 purchase money mortgage against the property at 5690 Stillmeadow Dr., Reno, NV 89502 (the "Property"). (*See* Deed of Trust ("DOT") 1–2, July 22, 2005, ECF No. 12-1, at 2). Golden West Savings Association Service Co. ("Golden West") was the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") is listed nowhere on the DOT. (*See id.* 2). On October 26, 2007, Golden West filed a notice of default ("NOD"). (*See* NOD 1–2, Oct. 26, 2007, ECF No. 12-1, at 22). The NOD indicated that the mortgage was being accelerated. (*See id.* 1, fourth unnumbered paragraph ("[WSB] . . . does hereby declare all sums secured [by the DOT]

immediately due and payable . . . .")).

Plaintiff and his wife petitioned for Chapter 13 bankruptcy protection in the Northern District of California on February 1, 2008, and that court confirmed a plan on May 23, 2008. (*See* Compl. ¶ 13, Oct. 19, 2010, ECF No. 1-3). On September 2, 2008, Bankruptcy Judge Leslie Tchaikovsky granted in part Wachovia Mortgage, FSB's ("Wachovia")[1] motion for relief form automatic stay, ordering that the stay would remain in place on three conditions: (1) on August 15, 2008,[2] the debtors would begin tendering regular monthly payments plus one-sixth of a payment each month to Wachovia; (2) the debtors would be completely current on the mortgage no later than the close of business on February 27, 2009; and (3) the debtors would thereafter continue regular monthly payments. (*See* Adequate Protection Order 2, Sept. 2, 2008, ECF No. 12-1, at 25). On February 17, 2010, Judge Tchaikovsky terminated the automatic stay as to Wachovia, specifically indicating that it was "no longer restrained from completing its pending foreclosure initiated pursuant to the Notice of Default recorded on November 07, 2007 . . . ." (Order Terminating Automatic Stay 2, Feb. 17, 2010, ECF No. 12-1, at 30).[3]

Cal-Western Reconveyance Corp. ("Cal-Western"), as Wachovia's power of attorney, substituted itself as trustee on October 29, 2008. (*See* Substitution of Trustee, Oct. 29, 2008, ECF No. 12-1, at 35). Cal-Western noticed a trustee's sale for May 10, 2010, (*see* Notice of Trustee's Sale, Apr. 12, 2010, ECF No. 12-1, at 37), which did not occur, and it noticed a second sale for September 7, 2010, (*see* Notice of Trustee's Sale, Aug. 9, 2010, ECF No. 12-1, at 40), on which date it sold the Property to Wachovia, (*see* Trustee's Deed, Sept. 7, 2010, ECF No. 12-1, at 43).

---

[1] Formerly known as WSB.

[2] Wachovia appears to have drafted the order before the July 25, 2008 hearing date, but Judge Tchaikovsky did not sign it until September 2, 2008.

[3] The NOD recorded on November 7, 2007 is the same one that was signed by the original trustee on October 26, 2007. (*See* NOD 1–2).

1    On October 19, 2010, Plaintiff sued Defendant Wells Fargo Bank, N.A. ("Wells Fargo"),
2 as successor-in-interest to Wachovia, in state court on seven causes of action: (1) wrongful
3 foreclosure; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4)
4 unjust enrichment; (5) slander of title; (6) breach of fiduciary duty; and (7) violations of 12
5 U.S.C. § 2605(e). Defendant removed to this Court on November 8, 2010. On December 29,
6 2010, the Justice Court of Reno Township granted Wells Fargo a Temporary Writ of Restitution,
7 giving possession of the Property to Wells Fargo and ordering Plaintiff to vacate by 5:00 p.m. on
8 January 28, 2011. (*See* Writ of Restitution, Dec. 29, 2010, ECF No. 12-1, at 55). Plaintiff asked
9 this Court for a temporary restraining order against enforcement of the state court order, which
10 the Court granted on January 20, 2011 and later extended by stipulation. The Court denied a
11 preliminary injunction after a hearing on June 6, 2011, however, and later denied Plaintiff's
12 motion to reconsider because the bankruptcy judge had already ruled that the bank was entitled to
13 proceed with foreclosure based upon the original notice of default in light of Plaintiff's failure to
14 comply with the adequate protection order that had stayed foreclosure temporarily. Defendant
15 moved for summary judgment, and the Court granted the motion, with leave to amend the claim
16 pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). The
17 Court also expunged the lis pendens. Plaintiff filed the AC, listing a single claim under RESPA.
18 Defendant has moved to dismiss the AC and to strike the jury demand therein.

19 **II.     LEGAL STANDARDS**

20    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
21 claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
22 what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
23 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
24 that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule
25 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720

1  F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for
2  failure to state a claim, dismissal is appropriate only when the complaint does not give the
3  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
4  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is
5  sufficient to state a claim, the court will take all material allegations as true and construe them in
6  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
7  Cir. 1986).  The court, however, is not required to accept as true allegations that are merely
8  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*
9  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action
10 with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
11 is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)
12 (citing *Twombly*, 550 U.S. at 555).

13       "Generally, a district court may not consider any material beyond the pleadings in ruling
14 on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the
15 complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
16 *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents
17 whose contents are alleged in a complaint and whose authenticity no party questions, but which
18 are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
19 motion to dismiss" without converting the motion to dismiss into a motion for summary
20 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule
21 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*
22 *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court
23 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
24 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
25 2001).

III.   ANALYSIS

Section 2605(e) governs the "[d]uty of [a] loan servicer to respond to borrower inquiries." 12 U.S.C. § 2605(e). Generally, "[i]f any servicer of a federally related mortgage loan receives a qualified written request. . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." *Id.* § 2605(e)(1)(A). A "qualified written request" is:

> a written correspondence . . . that . . . includes, or otherwise enables the servicer to identify, the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B), (B)(i)–(ii). In other words, a letter from a borrower with enough information to identify the name and account of the borrower, and which includes reasons why the borrower believes the servicer has made some error relating to the account or requests specific information about the account, is a qualified written request under the statute. Once a servicer receives a qualified written request, it must acknowledge receipt in writing within twenty days if it does not take the requested action. *Id.* § 2605(e)(1)(A). Not only must the servicer acknowledge receipt of the qualified written request or cure the alleged error within twenty days, within sixty days it must: (1) make appropriate corrections to the account; (2) after conducting an investigation provide the borrower with a written explanation or clarification containing the reasons the servicer believes there has been no error, as well as contact information for further inquiry; and (3) after conducting an investigation provide the borrower with a written explanation of why the requested information is unavailable or unobtainable, as well as contact information for further inquiry. *Id.* § 2605(e)(2)(A)–(C). Servicers violating the statute are liable to borrowers for actual damages, and for additional damages not to exceed $1000 in cases indicating a pattern or practice of noncompliance. *Id.* § 2605(f)(1)(A)–(B). Successful plaintiffs may also recover costs and

1   reasonable attorney's fees. *Id.* § 2605(f)(3).

2   Defendant previously noted that Plaintiff had failed in the Complaint to identify the
3   nature of his alleged actual damages, as is required, *see* § 2605(f)(1)(A), and had also failed to
4   identify any specific written requests, when they were sent, or what they pertained to, which is
5   also required, *see Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1232 (S.D. Cal. 2009).
6   The Court agreed but granted leave to amend to plead the required facts. *See id.* In the AC,
7   Plaintiff alleges he sent four "qualified written requests" to Wachovia and WSB (predecessors-
8   in-interest to Defendant Wells Fargo). (*See* Am. Compl. ¶¶ 36–40, Mar. 16, 2012, ECF No. 61).

9   Defendant first argues that Plaintiff has no Article III standing to pursue his RESPA
10  claims because he does not allege any injury-in-fact fairly traceable to any failure to respond to
11  the alleged qualified written requests. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). Defendant
12  makes a parallel argument under Rule 12(b)(6) that the alleged RESPA violations are not
13  sufficiently alleged to have been the cause of the alleged damages.

14  Plaintiff alleges that because of the foreclosure and the sheriff's assistance in the
15  execution thereof on January 3, 2012, Plaintiff was allowed only a total of thirteen hours to
16  remove personal property from the Property on January 4 and 5, 2012, requiring Plaintiff to leave
17  certain personal property in the Property that has never been recovered. (*See* Am. Compl. ¶¶
18  27–29). Plaintiff also alleges medical problems arising from or aggravated by these events. (*See*
19  *id.* ¶ 31).[4] This is sufficient to allege damages, but Defendant also argues that these alleged
20  damages were not caused by the foreclosure, which has been ruled to have been statutorily
21  proper, and not by any alleged RESPA violations. Plaintiff, however, alleges that had he
22  received responses to his qualified written requests, he would have been able to avoid foreclosure
23  "as he had funds available to do so and was in contact with a private lender who was willing to

---

[4] Plaintiff also alleges that his wife suffered medical problems caused by the foreclosure, but she is not a party to the action.

finance a new mortgage on the property and pay off the existing mortgage." (*Id.* ¶ 44). This sufficiently alleges causation. The right of redemption under a mortgage, even if a mortgage has been accelerated, is not foreclosed until the moment of sale, at which moment the defaulted owner loses all legal and equitable interest in the property. *See In re Grant*, 303 B.R. 205, 208–09 (Bankr. D. Nev. 2003) (Riegle, Bankr. J.) (citing Nev. Rev. Stat. § 107.080(5); *Charmicor, Inc. v. Bradshaw Fin. Co.*, 550 P.2d 413 (Nev. 1976); *McCall v. Carlson*, 172 P.2d 171 (Nev. 1946); *Bryant v. Carson River Lumbering Co.*, 3 Nev. 313, 317–18 (1867)). Plaintiff sufficiently alleges he had the ability to redeem the default prior to the foreclosure sale had he been provided with the necessary information how to do so in response to his requests, i.e., who to pay, by what method, etc. Although the foreclosure sale cannot be reversed under Nevada law, Plaintiff has sufficiently alleged causation and damages under RESPA.

Finally, Defendant argues that Plaintiff does not sufficiently allege having made qualified written requests. Plaintiff alleges four relevant communications with Defendant's predecessors-in-interest.

### A.   The November 11, 2007 Letter

First, Plaintiff alleges that on November 11, 2007, Plaintiff both mailed and faxed a letter to "Jesse" at WSB's foreclosure department "regarding the status of the mortgage account" and that he never received any response. (*See* Am. Compl. ¶ 39). Defendant attaches a copy of the received fax. (*See* Fax, Nov. 13, 2007, ECF No. 69-1).[5] The letter was in response to a letter received from WSB on November 9, 2007. (*See id.* 1). The letter recounted prior communications with WSB and WSB's refusal to accept additional payments because the loan was in foreclosure. (*See id.*). The letter noted that a hardship letter was attached in support of a

---

[5]The fax cover sheet and the electronic headings on the document are dated November 13, 2007, though the document itself is dated November 11, 2002, which is likely a typographical error.

1  request to forbear foreclosure. (*See id.* 1–2).  However, the letter did not request any information
2  or challenge any alleged errors in the account.  It therefore was not a qualified written request
3  under RESPA.

4        **B.**      **The April 27, 2009 Letter**

5        Second, Plaintiff alleges that he never received a response to a April 27, 2009 letter he
6  sent to Wachovia regarding a returned mortgage payment, asking how much he owed on the
7  mortgage. (*See* Am. Compl. ¶ 38).  Defendant adduces this letter, which is dated April 25, 2009.
8  (*See* Letter, Apr. 25, 2009, ECF No. 69-2).  Defendant incorrectly argues that the letter does not
9  specifically request information relating to the servicing of the loan.  In the letter, Plaintiff
10 indicated that Wachovia had returned a check to his bankruptcy attorney without explanation.
11 (*See id.* 1).  The letter referred to language stamped on the returned check and asked, "What does
12 that mean and how much do we owe?"  Because Plaintiff via this letter requested information
13 concerning his account, i.e., the balance due and an explanation concerning why the previous
14 payment was returned, it was a qualified written request under RESPA.

15       **C.**      **The May 10, 2010 Letter**

16       Third, Plaintiff alleges he mailed a letter to a Wachovia agent named Magaly on May 10,
17 2010 concerning the potential trustee's sale of the Property, challenging the claim of default, and
18 seeking information regarding the mortgage payments, but that he received no response. (*See*
19 Am. Compl. ¶ 37).  Defendant adduces the letter, which is dated May 10, 2010. (*See* Letter, May
20 10, 2010, ECF No. 69-3).  In this letter, Plaintiff challenged the amounts allegedly owed on the
21 mortgage. (*See id.* 1 ("The amounts your attorney's office provided are incorrect amounts of
22 $15,000 to $17,000!  These are incorrect amounts and we cannot understand how these were
23 arrived at.  I cannot seem to get any clarity from anyone as to how these amounts were arrived
24 at.")).  This claim of error in the account is sufficient to make the letter a qualified written
25 request under RESPA.  Defendant argues that the challenge to the amount owed is insufficient

because no reasons were provided explaining why Plaintiff believed the amounts were incorrect. The letter was a qualified written request despite the lack of any explanation in the letter why Plaintiff believed the amount was too high. A qualified written request may consist of either a challenge to an accounting or a request for other information concerning the account, *see* 12 U.S.C. § 2605(e)(1)(B), (B)(i)–(ii) ("includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower." (emphasis added)), and this letter easily qualifies as a request for information concerning the account.

### D. The September 3, 2010 Fax

Fourth, Plaintiff alleges that on September 3, 2010, he faxed a letter to Wachovia regarding the status of the account and asking for help, and that he received no response. (*See* Am. Compl. ¶ 40). Defendant adduces a copy of the document, which was dated September 3, 2010 and was apparently transmitted on the same day, according to the fax headers. (*See* Fax, Sept. 23, 2010, ECF No. 69-4). In the document, Plaintiff complained of the posting of the notice of trustee's sale on the Property on August 13, 2010 informing him that the Property would be sold on September 7, 2010. (*See id.* 1). The document was written in an angry tone, recounting Plaintiff's displeasure with the bank, but it did not include any requests for information or claims of error in the account, so it did not qualify as a qualified written request.

In summary, the April 27, 2009 and May 10, 2010 letters were qualified written requests under RESPA, Plaintiff has sufficiently alleged having made these requests, that no response was received, that foreclosure resulted, and that he was thereby damaged via the loss of property and via medical complications. Plaintiff will have to prove a RESPA violation, causation, and damages, but the Court will not dismiss for lack of standing or failure to state a claim.

Finally, Defendant asks the Court to strike the jury demand in the AC because Plaintiff failed to make the demand within fourteen days of Defendant filing its answer. The Court grants

the motion.  Under Rule 38, a party waives a jury trial by failing to properly serve and file a demand for one.  *See* Fed. R. Civ. P. 38(d).  The written demand must be served "no later than 14 days after the last pleading directed to the issue is served."  Fed. R. Civ. P. 38(b)(1).  Where a removing defendant has not answered before removal, as here, the time to demand a jury trial runs from the time the defendant files the answer in federal court.  *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061, 1063 (9th Cir. 2005).  Plaintiff filed the Complaint in state court on October 19, 2010, without a jury demand.  Defendant answered after removal on November 15, 2011, giving Plaintiff until November 29, 2011 to demand a jury trial.  *See id.*  Plaintiff filed no jury demand until March 16, 2012.  Although state law permits a jury demand to be propounded at any time before the first order is entered setting the case for trial, *see* Nev. R. Civ. P. 38(b), only pre-removal compliance with state law will avoid waiver under Federal Rule 38(d), *Lutz*, 403 F.3d at 1063–64 (citing Fed. R. Civ. P. 81(c)).  Also, no jury demand is required in federal court if state law does not require one, Fed. R. Civ. P. 81(c)(3)(A), but Nevada law does require a jury demand, Nev. R. Civ. P. 38(b).  The Court therefore strikes the jury demand as waived.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 68) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike Jury Demand (ECF No. 70) is GRANTED.

IT IS SO ORDERED.

Dated this 13th day of September, 2012.

_____
ROBERT C. JONES
United States District Judge